# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**RODNEY JETT,**

    Plaintiff,

v.                                                                                                  **Case No. 19-CV-1365**

**SCOTT M. ECKSTEIN, et al.,**

    Defendants.

## SCREENING ORDER

Plaintiff Rodney Jett, an inmate confined at Green Bay Correctional Institution, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. This order resolves Jett's motion for leave to proceed without prepaying the filing fee and screens his complaint.

The court has jurisdiction to resolve Jett's motion to proceed without prepaying the filing fee and to screen the complaint in light of Jett's consent to the full jurisdiction of a magistrate judge and the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Wisconsin Department of Justice and this court.

1. **Motion for Leave to Proceed without Prepaying the Filing Fee**

The Prison Litigation Reform Act (PLRA) applies to this case because Jett was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the

court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On September 30, 2019, the court ordered Jett to pay an initial partial filing fee of $28.30. (ECF No. 7.) Jett paid that fee on October 31, 2019. The court will grant Jett's motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

**2. Screening the Complaint**

*2.1 Federal Screening Standard*

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain

2

enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

*2.2 Jett's Allegations*

Jett alleges that, on March 21, 2018, unidentified officers unnecessarily used an incapacitating chemical agent in an excessive amount on another inmate living on the restricted housing unit. According to Jett, officers did not turn off the air handlers prior to using the chemical agent. As a result, the chemical agent allegedly filled Jett's cell.

Jett explains that he has asthma and exposure to the chemical agent made it difficult for him to breathe. Jett states that he suffered "non-stop gagging, coughing and choking constantly, causing his eyes, sinus, and lungs to constantly burn causing

3

[him] to constantly be in pain for several hours, believing he was going to die." (ECF No. 1 at 3.) Jett alleges that he pushed his emergency call button and explained that his asthma was giving him problems and he would like to see health services. He alleges that he was told health services would be contacted, but he never saw anyone.

*2.3 Analysis*

"[U]nder the Eighth Amendment, pepper spray may be used in limited quantities when reasonably necessary to subdue, or maintain control over, an inmate." *Gant v. Cushing*, No. 19-C-640, 2019 WL 2374394, at *3 (E.D. Wis. June 5, 2019) (quoting *Lindsey v. Boughton*, No. 17-cv-52-jdp, 2018 WL 3824143, at *4 (W.D. Wis. Aug. 10, 2018)). "The use of pepper spray violates the Eighth Amendment, however, when used in quantities greater than necessary to maintain discipline or for the sole purpose of punishment or the infliction of pain." *Id.* (internal quotation marks and citations omitted). "Bystander exposure to pepper spray is analyzed under the same legal test. Even when bystanders do nothing to necessitate the use of pepper spray, there is not a constitutional violation unless officers are shown to have acted maliciously and with the intent to harm." *Id.*

Jett states a claim under the Eighth Amendment based on his allegations that officers unnecessarily used an incapacitating agent in an excessive amount on another inmate and failed to turn off the air handling system before doing so, allowing the chemical agent to enter Jett's cell. Development of the record may reveal that the use of the chemical agent and the failure to turn off the air handling system were not

4

done for the sole purposes of inflicting harm; however, taking Jett's allegations as true, which the court must at this stage, the court finds he states a claim.

Jett also states a deliberate-indifference claim based on his allegations that, despite telling an officer that he was having difficulty breathing due to his asthma, health services never responded. *See Boyce v. McKnight*, No. 14-C-418, 2015 WL 8778330, at *12 (N.D. Ill. Dec. 15, 2015) (acknowledging that, while courts have consistently held that the lingering effects of exposure to pepper spray are not constitutionally actionable, unique and serious harm suffered in response to pepper spray may be actionable).

Having decided that Jett states claims under the Eighth Amendment, the court must determine against whom he states those claims. Jett sues Scott Eckstein—the warden, VanLanen—the supervising captain on the restricted housing unit, John Kind—the security director, Lutsey—the health services manager, and John and Jane Does. It appears that Jett sues Eckstein, VanLanen, Kind, and Lutsey because of their roles as supervisors. The doctrine of *respondeat superior* cannot be used to hold a supervisor liable for the misconduct of a subordinate. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The only time a supervisor will be held liable for a subordinate's misconduct is if the supervisor directs or consents to the misconduct. For example, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye" for fear of what he might see. *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988)). "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable."

*Jones*, 856 F.2d at 992. Jett does not allege that these supervisors were personally involved in any of the events giving rise to his claims. Because their roles as supervisors—without more—is an insufficient basis for liability, Jett fails to state a claim against them.

Jett does not know the names of the officers who used the chemical agent, who failed to turn off the air handling system, or who responded to his call for help after he pressed his emergency call button. Accordingly, the court will allow him to use John and Jane Doe placeholders until he learns their names. The court will leave Scott Eckstein as a defendant for the limited purpose of helping Jett learn the names of the Doe defendants. *See Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 556 (7th Cir. 1996). Eckstein does not have to respond to the complaint. After an assistant attorney general files an appearance in this case, Jett may serve discovery requests upon Eckstein (by mailing the assistant attorney general at the address in the notice of appearance) to get information that will help identify the names of the Doe defendants.

For example, Jett may serve interrogatories (written questions) under Fed. R. Civ. P. 33 or document requests under Fed. R. Civ. P. 34. Because Jett does not state a claim against Eckstein, Jett's discovery requests must be limited to information or documents that will help him learn the names of the defendants he is suing. Jett may not ask about any other topic, and Eckstein is under no obligation to respond to requests about any other topic.

After Jett learns the names of the people he alleges violated his constitutional rights, he must file a motion to substitute their names for the John and Jane Doe placeholders. The court will dismiss Eckstein as a defendant once Jett identifies the Doe defendants' names. After the defendants have an opportunity to respond to Jett's complaint, the court will set a deadline for discovery. At that point, Jett may use discovery to get the information he believes he needs to prove his claims. Jett must identify the names of the John and Jane Doe defendants within sixty days of the assistant attorney general filing an appearance. If he does not or does not explain to the court why he is unable to do so, the court may dismiss his case based on his failure to diligently pursue it. Civil L. R. 41(c).

Finally, the court reminds Jett that § 1983 requires that an individual be personally involved in the alleged constitutional violation. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Accordingly, he should identify as defendants only those officers who used the chemical agent, who failed to turn on the air handling system, and who failed to get medical help for him after he pressed his emergency call button. Jett should not take this as an opportunity to identify every officer who was working on the unit or every officer who was merely present when the chemical agent was used. Jett should identify only those officers who were personally responsible for the alleged misconduct.

## 3. Conclusion

**THEREFORE, IT IS ORDERED** that Jett's motion for leave to proceed without prepaying the filing fee (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that VanLanen, John Kind, and Lutsey are **DISMISSED** based on Jett's failure to state a claim against them.

**IT IS FURTHER ORDERED** that, although Jett fails to state a claim against Scott Eckstein, he shall remain as a defendant for the limited purpose of helping Jett identify the names of the Doe defendants.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on Eckstein.

**IT IS FURTHER ORDERED** that Eckstein does not have to respond to the complaint; however, he must respond to discovery requests that Jett serves in an effort to identify the Doe defendants' names. Eckstein does not have to respond to discovery requests about any other topic.

**IT IS FURTHER ORDERED** that Jett must identify the defendants' names within sixty days of an assistant attorney general filing an appearance in this case. If Jett does not identify the defendants' names by the deadline or advise the court why he is unable to do so, the court may dismiss this case based on his failure to diligently prosecute it.

**IT IS FURTHER ORDERED** that the agency having custody of Jett shall collect from his institution trust account the $321.70 balance of the filing fee by collecting monthly payments from Jett's prison trust account in an amount equal to 20% of the preceding month's income credited to Jett's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in

accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Jett is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Jett is confined.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Jett is further advised that failure to make a timely submission may result in the dismissal of this case for failure to prosecute. In addition, the parties must notify

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 6th day of November, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge